[No. 2481-1.    Division One.    May 5, 1975.]

JERRY BEAN et al, Appellants, v. GEORGE M. STEPHENS et al, Respondents.

Thomas J. Kraft (of Robbins, Merrick & Kraft), for appellants.

Williams, Lanza, Kastner & Gibbs and Gerald A. Palm, for respondents.

ANDERSEN, J.—

FACTS OF CASE

The plaintiff, a young woman, went to a dentist in Renton on July 6, 1972. Her visit was in connection with a number of dental problems she had, one of which was a toothache.

The dentist, who with his wife are the defendants in this case, examined her and injected a local anesthetic into the area of the aching tooth.

Thereafter, the defendant proceeded to prepare the tooth for a possible root canal filling using a tiny instrument known as an endodontic broach or root canal broach. This device is approximately 1¼ inches long and has tiny barbs along one end of it. It is used to extract tissue from within the root canal of the tooth. In size and shape, it somewhat resembles a common straight pin.

During the course of the dental work, the plaintiff swallowed this small instrument. Major abdominal surgery was ultimately required for its removal and this suit followed.

At trial, the plaintiff described to the jury how she came to swallow the endodontic broach:

> Well, I was laying back and I had my arms braced and my head pushed back against the chair because I was expecting pain again like the first time but there wasn't none because it was numb right then and I had my mouth open and he was working over me then and I felt something in my throat then and after trying to get his attention that something was in my throat and I was afraid to move right away, then he backed away and I sat up in the chair with my feet clear up in the air and I patted myself on the back and I said, well, I swallowed it and he said, you just swallowed my dental instrument, that is the first time that ever happened to me.

The dentist testified that the occurrence was caused by the plaintiff:

> And I took an instrument out similar to this [the endodontic broach] and placed it into the back of the tooth and when I got down to the very apex of the canal she jerked and the instrument was pulled from my grasp and went to the back of her throat and she swallowed it. . . . But at any rate, when I put the instrument in the canal, she made a, quite a substantial movement and it was; went down the hatch, I guess that is the best way to put it.

Expert testimony pertaining to the recognized standards of dental practice for the procedure in question was pre-

sented by both plaintiffs and defendants. This centered primarily about whether a rubber sheet or "dam" was necessary to protect against what transpired here or, if that wasn't feasible, whether some other protective procedure should have been utilized such as positioning the patient in a tilted forward position in the dental chair.

Testimony as to the proper dental practice to be followed was in substantial conflict. The defendant also testified that the tooth involved, as well as the surrounding teeth, was so badly decayed and broken that it would have been difficult, if not impossible, to fasten a rubber dam to any of them.

The case was submitted to the jury on instructions proposed by the plaintiffs. There were no instructions on contributory negligence, it not having been pleaded by the defendants.

The instructions informed the jury that it was a dental malpractice case and that plaintiffs contended the defendant dentist was negligent in dropping a dental instrument into the plaintiff wife's mouth which she swallowed. The jury was instructed that plaintiff had the burden of proving that the defendant dentist acted or failed to act in one of the ways claimed by the plaintiffs and that in so acting or failing to act he was negligent and that such negligence was the proximate cause of her injury.

The instruction as to the defendant dentist's duty to his patient used language from Washington Pattern Jury Instructions.[1] WPI 105.01, 6 Wash. Prac. 307 (1967, Supp. 1972).

---

[1] "A dentist owes to his patients a duty to comply with the recognized standard of practice for his profession prevailing at the time of the treatment in question. This means that he must possess and apply that degree of skill and learning and exercise that degree of care which is ordinarily possessed and exercised by the average dentist acting in the same or similar circumstances. Failure to apply such skill and learning or to exercise such care is negligence.

"The degree of care, skill and learning which constitutes the recognized standard of practice (which involves matters not generally understood by those who are not trained in that profession) must be proved by testimony of members of that profession." Instruction No. 6.

Plaintiffs took no exceptions to the instructions given. Plaintiffs did, however, except to the court's failure to give two of their proposed additional instructions. These additional instructions were proposed later in the trial and were on res ipsa loquitur and informed consent.

The jury returned a defense verdict. Plaintiff's motion for judgment n.o.v. or in the alternative for a new trial was denied and judgment was entered for the defendants. Plaintiffs appeal therefrom. Plaintiffs' counsel on appeal did not try the case below.

## ISSUES

ISSUE ONE. Can error assigned to the trial court's failure to define ordinary negligence in its instructions to the jury be considered where, as here, no such instruction was proposed?

ISSUE TWO. Did the trial court err in not instructing the jury on res ipsa loquitur?

ISSUE THREE. Did the trial court err in also not instructing the jury on informed consent?

ISSUE FOUR. Should the trial court have granted a new trial on the ground that substantial justice was not done?

## DECISION

ISSUE ONE.

CONCLUSION. It was not error to fail to give an instruction which was never proposed.

■ Plaintiffs assign error to the failure to give an instruction on ordinary negligence. No such instruction was submitted as required by CR 51. Having failed to request such an instruction, plaintiffs cannot predicate error on its omission. *McGarvey v. Seattle*, 62 Wn.2d 524, 532, 384 P.2d 127 (1963).

ISSUE TWO.

CONCLUSION. The court did not err in failing to submit a proposed instruction on res ipsa loquitur when it did not correctly state the law.

Plaintiffs assign error to the trial court's refusal to give their proposed instruction on res ipsa loquitur.[2]

Plaintiffs rely principally on three medical malpractice cases in this state where the giving of an instruction on res ipsa loquitur has been approved. These are *Douglas v. Bussabarger*, 73 Wn.2d 476, 438 P.2d 829 (1968); *Pederson v. Dumouchel*, 72 Wn.2d 73, 431 P.2d 973, 31 A.L.R.3d 1100 (1967); and *Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc.*, 62 Wn.2d 351, 382 P.2d 518 (1963). In each of those three cases, the jury was specifically informed by the res ipsa loquitur instruction that it was at liberty to infer negligence or not to infer it as the jury saw fit. This is not what the proposed instruction did in this case.

■ The plaintiffs' proposed instruction on res ipsa loquitur provided that upon making certain findings, the jury "shall find" that the dentist was negligent. Res ipsa loquitur is an inference and even in those cases where it is proper to instruct a jury on it, the jury should be left at liberty to infer negligence or not to infer it, as the jury sees fit. *Lappin v. Lucurell*, 13 Wn. App. 277, 534 P.2d 1038 (1975). *Accord, Douglas v. Bussabarger, supra; Pederson v. Dumouchel, supra; Horner v. Northern Pac. Beneficial Ass'n Hosps., Inc., supra.* The proposed instruction was incorrect.

---

[2]"You must decide the following question concerning the injury involved in this case:

"Is it the kind of injury which ordinarily does not occur in the absence of negligence?

"Was the injury caused while the plaintiff was exclusively under the care and control of the defendant, George M. Stephens?

"Was the injury due to any voluntary action or contribution on the part of Mrs. Bean which was the responsible cause of her injury?

"If you find that Patricia Bean's injury was of a kind which ordinarily does not occur in the absence of such negligence; that it was caused while she was exclusively under the care and control of George M. Stephens; and that it was not due to any voluntary action on her part, *you shall find that the said George M. Stephens was negligent,* and award such damages proximately caused by such negligence as defined elsewhere in these instructions." (Italics ours.) Plaintiff's additional requested instruction No. 9.

■ A trial court is not required to give an instruction which is erroneous in any respect. *State v. Chambers*, 81 Wn.2d 929, 933, 506 P.2d 311 (1973); *Olympia v. Sprout*, 5 Wn. App. 897, 898, 492 P.2d 586 (1971).

ISSUE THREE.

CONCLUSION. There was no substantial evidence in this case on the issue of informed consent and, therefore, the trial court did not err in refusing to instruct on it.

Plaintiffs assign error to the trial court's refusal to submit their proposed instruction on the defendant dentist's duty to inform the plaintiff wife of all material facts which she should know in order for her to make an informed decision as to whether or not she desired to submit to a root canal procedure.

■ It is well established that it is prejudicial error to submit an issue to the jury where there is no substantial evidence concerning it. *Albin v. National Bank of Commerce*, 60 Wn.2d 745, 754, 375 P.2d 487 (1962). That rule is equally applicable to informed consent cases. *Sanderson v. Moline*, 7 Wn. App. 439, 444, 499 P.2d 1281 (1972).

There being no substantial evidence on the subject of informed consent, it was not error for the trial court to refuse to instruct on it.

ISSUE FOUR.

CONCLUSION. No showing has been made that the trial court abused its discretion in denying the motion for a new trial on the ground that substantial justice had not been done.

We here have a case where the plaintiff walked into a dentist's office with a toothache and walked out with a dental instrument in her alimentary canal. Whatever one may feel about such an occurrence, the fact remains that in this case the jury was the final arbiter of the facts.

The case was tried to a jury of plaintiffs' peers. It was submitted on written instructions as to the law and to which plaintiffs took no exception. The jury found for the defendants on conflicting testimony as to what caused the event in question.

■   As held in *Rettinger v. Bresnahan,* 42 Wn.2d 631, 633, 257 P.2d 633 (1953):

It is the province of the jury to weigh the evidence, under proper instructions, and determine the facts. It is the province of the jury to believe, or disbelieve, any witness whose testimony it is called upon to consider. If there is substantial evidence (as distinguished from a scintilla) on both sides of an issue, what the trial court believes after hearing the testimony, and what this court believes after reading the record, is immaterial. The finding of the jury, upon substantial, conflicting evidence properly submitted to it, is final.

The record disclosed substantial evidence which, if believed, supports the verdict of the jury.

The trial court did not err when it denied appellant's motion for judgment notwithstanding the verdict of the jury.

*Accord, Day v. Frazer,* 59 Wn.2d 659, 665, 369 P.2d 859 (1962); *Pritchett v. Seattle,* 53 Wn.2d 521, 525, 335 P.2d 31 (1959).

Plaintiffs' motion for judgment n.o.v. or in the alternative for a new trial was properly denied.

The judgment for defendants is affirmed.

FARRIS and JAMES, JJ., concur.

Petition for rehearing denied June 30, 1975.

Review denied by Supreme Court November 5, 1975.